UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| EILEEN LATHAM, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 15-141-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| THE LINCOLN NATIONAL LIFE | ) | **MEMORANDUM OPINION** |
| INSURANCE COMPANY, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Plaintiff Eileen Latham's motion for an order regarding whether this action is governed by the Employee Retirement Income Security Act ("ERISA"). 29 U.S.C. §§ 1001, *et seq.* [Record No. 19] Latham claims that removal under 28 U.S.C. § 1441(a) is improper insofar as it is premised on the existence of a federal question. 28 U.S.C. § 1331. [Record No. 19-1, p. 4] Specifically, she argues that the long-term disability benefits she received from the defendant are not governed by ERISA. [*Id.*] Defendant Lincoln National Life Insurance Company ("Lincoln") contends that removal is proper because the benefits form part of a larger "Plan" governed by ERISA. [Record No. 20] For the reasons outlined below, the Court concludes that ERISA governs Latham's claims regarding long-term disability benefits.

**I.**

While employed at Nurses Registry and Home Health Care ("Nurses Registry") in Fayette County, Kentucky, Eileen Latham elected to become insured under a long-term disability insurance ("LTD") policy with The Lincoln National Life Insurance Company.

- 1 -

[Record No. 1-1, p. 5] Lincoln provided a LTD policy, among other insurance policies, to employees of Nurses Registry. [*Id.*; Record No. 20-2, p. 6, "Application for Group Insurance"] The plaintiff alleges that she became disabled under the terms of the LTD policy in July of 2012. [Record No. 1-1, p. 6] On January 18, 2013, the defendant approved her claim for partial LTD benefits effective October 8, 2012. [*Id.*]

In September 2012, Latham became employed part-time, consistent with her partial disability benefits. [Record No. 19-1, p. 1] However, by letter dated May 1, 2014, Lincoln informed her that she was no longer eligible to continue receiving LTD benefits beyond October 8, 2014. [Record No. 1-1, p. 6] Latham subsequently appealed, and Lincoln affirmed its earlier decision by letter dated July 12, 2014. [*Id.*] The plaintiff then filed a second-level appeal. By letter dated December 9, 2014, the defendant again affirmed its prior determination. [*Id.*]

Having exhausted her administrative remedies, Latham filed suit against Lincoln in the Fayette Circuit Court on April 21, 2015, asserting breach of contract and negligence claims. [Record No. 1-1, pp. 4, 7] On May 19, 2015, Lincoln filed a Notice of Removal, alleging both diversity and federal-question jurisdiction.[1] 28 U.S.C. §§ 1331, 1332, 1441, 1446. [Record No. 1, p. 1] Specifically, Lincoln asserted that Latham's LTD policy is part of an employee welfare benefit plan governed by ERISA. 29 U.S.C. §§ 1001, *et seq*.

On July 16, 2015, this Court directed the parties to submit briefs addressing whether ERISA governs the claims asserted by Latham. [Record No. 17] In support of her motion,

---

[1] Even if there were no federal questions presented, removal would still be proper because there is complete diversity among the parties and the matter in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332. [Record No. 1, p. 4]

Latham contends that disability benefits fall within ERISA's "safe harbor" as set forth in 29 C.F.R. § 2510.3-1(j). [Record No. 19-1, p. 5] She further asserts that LTD coverage is not part of a "plan" that is "established or maintained" by Nurses Registry. [*Id.*, pp. 13, 15] In response, Lincoln claims that the benefits fall outside the safe harbor and that they form part of an ERISA plan established and maintained by Nurses Registry. [Record No. 20, pp. 4, 14, 15]

**II.**

Under 28 U.S.C. § 1441(a), a defendant may remove any civil action brought in a state court if the district court would have original jurisdiction. District courts have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. For removal premised on federal-question jurisdiction, the burden is on the party seeking removal. *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 757 (6th Cir. 2000).

This Court undertakes a three-step inquiry in determining whether ERISA governs an employee welfare benefit plan. First, it applies the "safe harbor regulations" of the Department of Labor. *Thompson v. Am. Home Assurance Co.*, 95 F.3d 429, 434–35 (6th Cir. 1996) (referring to 29 C.F.R. § 2510.3-1(j)). Next, the court determines whether a "plan" exists. *Id.* at 435. Third, it asks whether the employer "established or maintained" the plan with the intent of providing benefits to its employees." *Id.* As described below, Latham's LTD policy does not fall within the exemption. Further, Nurses Registry established and maintained a plan with the intent of providing benefits to its employees.

### A. Safe Harbor

Under 29 C.F.R. § 2510.3-1(j), insurance programs do not qualify as "employee welfare benefit plans" subject to ERISA if all of the following criteria are met: (i) the employer makes no contributions to the program; (2) participation in the program is completely voluntary for employees; (3) the employer does not endorse the program; and (4) the employer receives no consideration in connection with the program, excluding reasonable compensation for administrative services. *Fugarino v. Hartford Life & Accident Ins. Co.*, 969 F.2d 178, 183 (6th Cir. 1992) (A program is exempted from ERISA only if all four criteria are met.).

Latham claims that Lincoln has not shown that the long-term disability benefits she received fall out of the exemption set forth in 29 C.F.R. § 2510.3-1(j). [Record 19-1, pp. 5–13] Lincoln, on the other hand, contends that the safe harbor does not apply to Latham's benefits for two reasons. [Record No. 20, p. 4] First, it asserts that Nurses Registry made contributions to the overall "Plan" governing Latham's LTD benefits. [*Id.*, pp. 5–9] Second, it argues that Nurses Registry "endorsed" the plan of which the LTD benefits were a part. [*Id.*, pp. 9–14] Lincoln concedes that the other two factors (i.e., that employees participated voluntarily in the program and that Nurses Registry received no meaningful compensation) are not applicable to Latham's case. [*Id.*, p. 13]

1.     **Contributions**

A benefits plan falls within the protections of the safe harbor only if the employer makes no contributions to the plan. 29 C.F.R. § 2510.3-1(j)(1). Latham claims that, because Nurses Registry made no contributions to any employee's LTD benefits plan, her claim meets the first criterion of the safe harbor. [Record No. 21, p. 3] Lincoln, however, asserts that because Nurses Registry paid the premiums for all registered employees' basic group life insurance, it made contributions to the overall "Plan." [Record No. 20, p. 6] The ultimate issue is whether the LTD policy is severable from the other insurance policies offered by Nurses Registry to its employees.

"Employers may establish ERISA plans very easily." *Libbey-Owens v. Blue Cross and Blue Shield Mut. of Ohio*, 982 F.2d 1031, 1034 (6th Cir. 1993) (citing *Int'l Res., Inc. v. New York Life Ins. Co.*, 950 F.2d 294, 297 (6th Cir. 1991). "[E]mployee welfare benefit plans may be created through the mere purchase of a group health insurance policy when the owner does not retain control, administrative power, or responsibility for benefits." *Id.* The Sixth Circuit has dealt very little with the "contribution" criterion. However, in *Helfman v. GE Group Life Assurance Co.*, the court found that an employer failed this criterion when it contributed to some employees' LTD benefits and not others'. 573 F.3d 383, 391 (6th Cir. 2009). Looking to the underlying policy objectives of ERISA, the court reasoned that allowing ERISA to apply to only some employees under the plan would create disparate governance schemes.[2]  *Id.* at 390.

---

2      The court also noted that, contrary to Latham's assertion, the first criterion is not viewed from the employee's perspective. *Id.* at 391. [Record No. 21, p. 3]

District courts within this circuit have applied *Helfman*'s reasoning.  For example, in *Fitgerald v. Cont'l Assurance Co.*, the court stated that it could not "ignore the contributions made by [the employer] simply because the portion of the Policy under which Plaintiff seeks payment was contributory."[3]  No. 5:07-413, 2008 WL 5427635, at *4 (E.D. Ky. Dec. 30, 2008).  In *Fitzgerald*, the employer made contributions to Basic Life, Accidental Death & Dismemberment ("AD&D"), and Retiree Life portions of its policy, but employees were responsible for paying the premiums for dependent life insurance coverage.  *Id.* at *1.  Looking to other circuits, the court stated that, when determining whether a benefit plan is subject to ERISA, its various aspects "ought not to be unbundled."  *Id.* at *4.

Similarly, in *Pemberton v. Reliance Std. Life Ins. Co.*, the district court found that "[c]omponent policies of an overall benefits plan cannot be considered independent of the plan for 'safe harbor' analysis purposes."  No. 08-86-JBC, 2008 WL 4498811, at *3 (E.D. Ky. Sept. 30, 2008) (citing *Gaylor v. John Hancock Mut. Life Ins. Co.*, 112 F.3d 460, 463 (10th Cir. 1997); *Postma v. Paul Revere Life Ins. Co.*, 223 F.3d 533, 538 (7th Cir. 2000); *Glass v. United of Omaha Life Ins. Co.*, 33 F.3d 1341, 1345 (11th Cir. 1994)).  *Pemberton* closely resembles the present case, as the employer in *Pemberton* did not pay any premiums for the LTD coverage but subsidized other benefits in its plan.  *Id.*  The court did not sever the LTD coverage from the remainder of the plan in its analysis.  Thus, it held that the first prong of the safe harbor test was not met.  *Id.*

---

3  By "contributory," the court meant that the policy was one to which *employees*, not employers, contributed.  *Id.* at *1.

Other circuits have construed the "no contribution" requirement consistently with the Sixth Circuit's interpretation. For example, in *Gaylor*, the Seventh Circuit held that an employer contributed to a plan where it paid the premiums for the mandatory AD&D policies but not for the optional policies, such as the plaintiff's disability package. 112 F.3d at 463. Similarly, in *Gross v. Sun Life Assurance Co. of Canada*, the First Circuit concluded that the non-contribution requirement was not met when the employer contributed to the life and AD&D policies but not to the plaintiff's LTD policy. 734 F.3d 1, 10 (1st Cir. 2013). Also, in *Smith v. Jefferson Pilot Life Ins. Co.*, the Eleventh Circuit found that an employer contributed to a plan where it paid the premiums for life and medical insurance while the employee paid the premiums for the dependent coverage. 14 F.3d 562, 568 (11th Cir. 1994).

Here, Lincoln argues that the LTD benefits Latham received cannot be severed from the other insurance policies offered by Nurses Registry to its employees. [Record No. 20, p. 6] However, Latham contends that severance is proper. [Record No. 21, p. 8] Lincoln's position is more consistent with applicable authorities. The Sixth Circuit focuses on the underlying policy objectives of ERISA in assessing the "no contribution" criterion. *Helfman v. GE Group Life Assurance Co.*, 573 F.3d 383, 390–91 (6th Cir. 2009). While *Helfman* is distinguishable from Latham's case because the employer in *Helfman* contributed to some employees' packages within the *same* LTD plan, its reasoning is instructive. "'The purpose of ERISA preemption was to avoid conflicting federal and state regulation and to create a nationally uniform administration of employee benefit plans.'" *Id.* at 390 (citing *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 698 (6th Cir. 2005)). In particular, the plaintiff in *Helfman* advocated for a "hybrid approach," where his

case would be governed by ERISA while others' cases would not.  But the court declined to take that approach, explaining that it would lead to an "anomaly that the same plan will be controlled by discrete regimes." *Id.* (internal quotation omitted).  Further, the Sixth Circuit's liberal approach to finding ERISA-governed plans in *Libbey-Owens* and *International Resources* affirms *Helfman*'s policy-based reasoning.  *Libbey-Owens v. Blue Cross and Blue Shield Mut. of Ohio*, 982 F.2d 1031, 1034 (6th Cir. 1993); *Int'l Resources, Inc. v. New York Life Ins. Co.*, 950 F.2d 294, 297 (6th Cir. 1991).

In reaching this determination, the Court follows other district courts within this circuit.  *Pemberton* is directly on point, as that court found the safe harbor did not apply where the employer subsidized many benefits of an overall plan, while the employees paid the premiums for the LTD coverage.  NO. 08-86-JBC, 2008 WL 4498811, at *3 (E.D. Ky. Sept. 30, 2008).  Further, *Fitzgerald* resembles the present case but is not directly on point, as the non-subsidized benefits in that case were dependent care benefits, rather than LTD benefits.  NO. 5:07-413, 2008 WL 5427635, at *1 (Dec. 30, 2008).  Some courts have found that dependent care coverage is additional coverage of the *same kind* as life insurance, meaning it cannot be viewed separately from life insurance, while LTD benefits constitute a different kind of coverage.  *See, e.g.*, *Metoyer v. Am. Intern. Life Assurance Co. of New York*, 296 F. Supp. 2d 745, 750 (S.D. Tex. 2003).  This Court acts consistently with *Pemberton* and the Sixth Circuit generally in rejecting that approach.  2008 WL 5427635, at *4.

Considering the policies outlined in *Helfman*, the Court finds that the LTD benefits Latham received cannot be severed from the basic group life insurance policy.  Nurses Registry funded the basic group life insurance policy -- the policy in which employees would

- 8 -

most likely enroll -- for all registering employees. [Record No. 20-2, p. 8] It then offered an optional LTD policy from the *same* insurer.[4] [*Id.*] Further, it applied for this coverage on the same form as the basic group life coverage, and all the policies shared a Group ID. [*Id.*, pp. 6, 8] In addition, the group contact from Nurses Registry for all policies was the same person, and negotiations for the different policies appear in the same document. [*Id.*, p. 8, "RGO Initiator Checklist"] If this Court were to sever the Lincoln LTD policy from the basic group life insurance policy, it would subject employees to differing legal regimes for their policies from the *same* insurer under coverage negotiated by the *same* employer during a *single* period. Based upon the policy objectives outlined in *Helfman*, *Libbey-Owens*, and *International Resources*, the Court declines to do so.

In refusing to sever the LTD policy, this Court also follows the approaches outlined in the Seventh, Tenth, and Eleventh Circuits. *Gaylor v. John Hancock Mut. Life Ins. Co.*, 112 F.3d 460, 463 (10th Cir. 1997); *Gross v. Sun Life Assurance Co. of Canada*, 734 F.3d 1, 10 (1st Cir. 2013); *Smith v. Jefferson Pilot Life Ins. Co.* 14 F.3d 562, 568 (11th Cir. 1994). While *Smith* involves dependent care benefits, which may be linked more closely with life insurance benefits than an LTD plan, *Gaylor* and *Gross* closely resemble Latham's case. In both, the courts held that severance was not appropriate where the employer contributed to life and AD&D packages, but not to disability packages, under the same general plan. 112

---

4  *See, e.g.*, *Gonzales v. Unum Life Ins. Co.*, No. 09cv468BTM, 2009 WL 3226519, at *5–6 (S.D. Cali. Oct. 2, 2009) (explaining how ERISA only exempts "separately administered" disability plans maintained to comply with state disability benefits laws) (citing *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 107 (1983)); *see also Estate of Thomson v. Zurich Am. Ins. Co.*, No. CV11-9110-PCT-JAT, 2012 WL 5031738, at *4 (requiring defendant to offer evidence that insurance benefits were offered as a single unit).

F.3d at 463; 734 F.3d at 10.  Because this Court finds it improper to sever the LTD policy from the other policies offered by Nurses Registry to its employees, Latham cannot meet the "no contribution" requirement of the safe harbor.  Therefore, Latham's claims regarding the LTD policy do not qualify for the exemption.

## 2. Endorsement

Additionally, the LTD benefits do not qualify for the exemption because Lincoln has shown that Nurses Registry "endorsed" the LTD policy.  A benefit plan may only fall within the safe harbor if the employer does not endorse it.  Under 29 C.F.R. § 2510-3(j)(3), the sole functions of the employer must be to permit the insurer to publicize the program and to collect premiums through payroll deductions, remitting them to the insurer.  "Where the employer 'offends the ideal of employer neutrality' as a result of its level of involvement, ERISA is properly invoked." *Thompson v. Am. Home Assurance Co.*, 95 F.3d 429, 436 (6th Cir. 1996) (quoting *Johnson v. Watts Regulator Co.*, 63 F.3d 1129, 1133 (1st Cir. 1995)). The defendant must make a factual showing of substantial employer involvement in the creation **or** administration of the plan.  *Id.* (emphasis added).

Five factors appear in *Thompson* for this endorsement analysis: (i) the role the employer plays in determining eligibility and in negotiating the policy terms; (ii) whether the employer is named as the plan administrator; (iii) the existence of a plan description given to the employee that refers to ERISA; (iv) materials suggesting to employees that the employer endorses the plan; and (v) the employer's participation in claim processing.  *Booth v. Life Ins. Co. of N. Am.*, No. 3:05cv-526-S, 2006 WL 3306846, *2–3 (W.D. Ky. Nov. 9, 2006).  In assessing these factors, the court should place emphasis on the employee's point of view.

*Thompson*, 95 F.3d at 437. However, this does not mean that a "specific employee has to know that a plan is governed by ERISA . . . . [I]t means that if a reasonable person in possession of the facts would be able to discern that a plan existed, then that plan is possibly (dependent on the other factors) an ERISA plan." *Nicholas v. Std. Ins. Co.*, 48 F. App'x 557, 564 (6th Cir. 2002) (rejecting plaintiff's contention that plan was not an ERISA plan as applied to him because he did not receive a copy of the summary plan description). In *Nicholas*, the court found endorsement where: (1) the employer determined employee eligibility and policy terms; (2) the employer was named the plan administrator; and (3) a summary plan description referenced ERISA. *Id.* Therefore, a court may find endorsement where only these three factors are present.

### a. Eligibility and Negotiation

"Where an employer plays an active role in either determining which employees will be eligible for coverage or in negotiating the terms of the policy . . . the extent of employer involvement is inconsistent with 'employer neutrality' . . . ." *Thompson*, 95 F.3d at 436. In *Nicholas*, the court emphasized the importance of the employer's involvement in determining which employees were eligible for coverage and the extent of such coverage. 48 F. App'x at 563. For instance, the employer's director of human services, Jim Tomaw, met regularly with the insurance broker. *Id.* Tomaw adjusted the benefit payment on the LTD plan at issue and restricted the LTD to salaried employees. *Id.* Thus, the court concluded that the employer "did not act neutrally in the creation of the plan, nor in the selection of plan contents." *Id.* at 562.

Latham's case closely resembles *Nicholas* with respect to the first factor set out in *Thomas*. Nurses Registry selected the terms of coverage (e.g., basic, voluntary), the amounts of coverage, and eligibility requirements (minimum hours worked, employee effective date, waiting periods).[5]  [Record No. 20-2, p. 3, Daly Decl. ¶5; p. 6, Application; p. 9, "Administration of Your Policy;" p. 19, "Voluntary Long Term Disability Schedule]  Nurses Registry also negotiated for open enrollment.  [Record No. 20-2, pp. 6, 12]  Further, it bargained so that Lincoln would take over the inforce amounts from prior insurers.  [*Id.*, p. 23, "e-mail from Webster to Sweetay"]  Moreover, Nurses Registry had Lincoln grandfather two employees whose amounts were over the Guaranteed Issue dollar amount.  [*Id.*, p. 8, RGO Initiator Checklist; p. 23, "e-mail"]  From this description, Nurses Registry did not "simply allow insurers to advertise a range of pre-determined plans to [its] employees." *Nicholas*, 48 F. App'x at 563; *compare with Tinsley v. Conn. Gen. Life Ins. Co.*, 744 F. Supp. 2d 637, 644 (finding that defendant failed to present any evidence of employer negotiations with the insurer).  Thus, this factor weighs heavily in favor of a finding of endorsement.

### b.   Named Administrator

"[W]here the employer is named as the plan administrator, a finding of endorsement may be appropriate."  *Thompson v. Am. Home Assurance Co.*, 95 F.3d 429, 436 (6th Cir. 1996).  But an employer can be a plan administrator "in name only and still satisfy the four requirements of the safe harbor regulation . . ."  *Stuart v. Unum Life Ins. Co. of Am.*, 217

---

5    Though Latham states that "[t]he *alleged* negotiations do not constitute any form of endorsement," she does not deny that Nurses Registry determined some of the eligibility factors or that it negotiated some of the terms with Lincoln. [Record No. 21, p. 12 (emphasis added)]  She merely points out that Lincoln also determined some aspects of eligibility. [Record No. 19-1, p. 9]

F.3d 1145, 1153 (9th Cir. 2000). Under 29 U.S.C. § 1002-16(A)(ii), if a plan does not designate an "administrator," a "plan sponsor" may be viewed as the administrator.

Daniel Baughn, a Nurses Registry employee, is named as the "Administrator" for at least one of the policies Nurses Registry negotiated with Lincoln, though he is not specifically listed as the administrator of Latham's LTD policy. [Record No. 20-2, p. 9] Here, the listing of Baughn as a plan administrator does not weigh strongly in favor of endorsement because Latham would not have seen the Application. *Bailey v. Minn. Life Ins. Co.*, No. 07-196-JBC, 2009 WL 803701, at *5 (E.D. Ky. March 24, 2009). However, the Summary of Benefits received by Latham states that the LTD policy is "sponsored by" Nurses Registry. [Record No. 19-5, p. 2] Under the regulations, this could give a reasonable employee an indication that Nurses Registry is the administrator of the policy. 29 U.S.C. § 1002-16(A)(ii). On the other hand, because Lincoln was the actual claims administrator for the LTD policy, the reasonable employee would view the term "sponsored by" as a designation for Nurses Registry "in name only." *Bailey*, 2009 WL 803701, at *5. [Record No. 19-8, pp. 10–12, "Claims Procedures"] Thus, this factor does not weigh in favor of endorsement.

### c. Plan Description with Reference to ERISA

"[W]here the employer provides a summary plan description that specifically refers to ERISA" to an employee, that employee "is entitled to presume that the employer's actions indicate involvement sufficient to bring the plan within the ERISA framework." *Thompson v. Am. Home Assurance Co.*, 95 F.3d 429, 437 (6th Cir. 1996). In *Nicholas*, the existence of a summary plan unequivocally stating that the LTD plan was governed by ERISA weighed

heavily in favor of the court's finding of endorsement. *Nicholas v. Std. Ins. Co.*, 48 F. App'x 557, 564 (6th Cir. 2002).

In Latham's case, the LTD policy provides,

> **Claims Subject to ERISA** (Employee Retirement Income Security Act of 1974). Before bringing a civil legal action under the federal labor law known as ERISA, an employee benefit plan participant must exhaust available administrative remedies. Under this Policy, the Insured Employee must first seek two administrative reviews of the adverse claim decision, in accord with this provision. If an ERISA claimant brings legal action under Section 502(a) of ERISA after the required reviews; then the Company will waive any right to assert that he or she failed to exhaust administrative remedies.

[Record No. 19-8, p. 12]

Latham was aware of this provision, as she demanded copies of plan documents from Lincoln under section 502(c) of ERISA.[6] This factor weighs heavily in favor of endorsement, as it would lead a reasonable employee to conclude that ERISA governs the specific LTD policy. *Nicholas*, 48 F. App'x at 564.

### d.  Materials Provided to Employee

Endorsement may be found where an employer provides materials to employees that suggest its involvement in setting the terms of coverage or in administering claims. Insurance policies bearing the employer's logo are particularly compelling in suggesting employer involvement. *Thomas*, 95 F.3d at 437. Latham alleges that, because Nurses Registry's logo does not appear on the LTD policy, Enrollment Form for Group Insurance, Certificate of Coverage, and Summary of Benefits, this factor weighs in her favor. [Record

---

6   Latham argues that the Court should view her request for documents as pleading in the alternative, rather than as a concession that ERISA governs. [Record No. 21, pp. 10–12] Because the Court only uses Latham's demand for documents to demonstrate her knowledge of the ERISA provision, it need not address this argument.

No. 19-1, pp. 11–12]   Lincoln responds that identifying Nurses Registry as the "policyholder" on the LTD policy and as the "sponsor" on the Summary of Benefits suggest endorsement.[7]  [Record Nos. 22, p. 8; 19-10, p. 15; 19-5, p. 2]

While the Court does not find this factor to strongly suggest endorsement, it does find that the factor weighs in favor of Lincoln.  A reasonable employee, in looking to the LTD policy, correspondence with Lincoln, and Summary of Benefits, could find that Nurses Registry offended the ideal of employer neutrality.  *See, e.g.*, *Pemberton v. Reliance Std. Life Ins. Co.*, No. 08-86-JBC, 2008 WL 4498811, at *6 (E.D. Ky. Sept. 30, 2008) (while employer's logo did not appear on the LTD policy documents, enrollment information and other forms for the Plan suggested endorsement of the LTD coverage).  [Record Nos. 19-10, p. 15; 20-2, pp. 23–24; 19-5, p. 2]

### e. Participation in Claim Processing

Lincoln concedes that Nurses Registry had no involvement in administering LTD benefits.  [Record No. 20, p. 13]  Thus, this factor clearly weighs in favor of Latham.  *See Pemberton*, 2008 WL 4498811, at *6.

After analyzing the five factors set out in *Thompson*, the Court finds that Nurses Registry endorsed the LTD policy. *Thompson v. Am. Home Assurance Co.*, 95 F.3d 429 (6th Cir. 1996).  Controlling precedent holds that where an employer: (i) determines coverage eligibility; (ii) negotiates terms of the policy; (iii) is named the plan administrator; and (iv) provides a summary plan description referencing ERISA, the safe harbor does not apply.

---

[7] In its first brief, Lincoln stated it "did not have any evidence to present relevant to the Court's inquiry on the fourth factor," however, some of the evidence it presented for the other factors is relevant for the Court's analysis of the fourth factor. [Record No. 20, p. 13]

*Nicholas v. Std. Ins. Co.*, 48 F. App'x 557, 564 (6th Cir. 2002). While this case may be weaker than *Nicholas* regarding the name of the "Plan Administrator," it is stronger than *Nicholas* on the fourth factor, as some materials provided to Latham suggest endorsement.[8] Finding that Latham's policy falls out of the safe harbor provision, the Court now turns to the question of whether Nurses Registry established or maintained an ERISA plan.

### B.     Existence of a "Plan"

An ERISA plan exists if "from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." *Int'l Resources, Inc. v. New York Life Ins. Co.*, 950 F.2d 294, 297 (6th Cir.1991) (citing *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir.1982)). The Court reviews the plan as a whole to see if a "plan" exists. *Pemberton*, 2008 WL 4498811, at *6. Latham asserts that her case does not fit within the framework set out in *International Resources* because Latham, rather than her employer, opted into the LTD plan and paid the premiums herself.[9] [Record No. 19-1, p. 14] But Lincoln argues that a reasonable person could ascertain all four factors set out in *International Resources*. [Record No. 22, p. 11]

---

8       In that sense, this case resembles *Pemberton*, where the district court found endorsement based on strong showings of the first and fourth prongs. *Pemberton*, 2008 WL 4498811, at *5–6.

9       Latham essentially makes the argument that was successful in *Bailey v. Minn. Life Ins. Co.*, No. 07-196-JBC, 2009 WL 803701, at *7 (E.D. Ky. March 24, 2009). In *Bailey*, the district court reasoned that because the employer in *International Resources* chose and funded a plan for all employees, a reasonable employee would more easily conclude that it advertised an ERISA plan. *Id.* The court stated that a reasonable employee would not conclude, on the other hand, that the employer in *Bailey* advertised the policy at issue. *Id.* As this Court finds the reasoning in *Bailey* to be more applicable to the "endorsement" prong in the "safe harbor" analysis, it rejects that approach. Contrary to Latham's assertion, the determination of whether a "plan" exists instead focuses on the court's ability to ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits. *Int'l Resources, Inc. v. New York Life Ins. Co.*, 950 F.2d 294, 297 (6th Cir.1991).

Regarding the first factor (i.e., intended benefits), the Voluntary Long Term Disability Schedule and the Summary of Benefits provide the maximum monthly benefit percentage an employee may receive, as well as the maximum benefit periods for different age groups. [Record Nos. 19-5, pp. 2–3; 20-2, pp. 19–20] For the second factor, the Summary of Benefits defines the class of beneficiaries as all "full-time employees" working at least 30 hours per week. [Record No. 19-5, p. 2] Regarding the third factor, a reasonable person could determine that funding was provided through a combination of employer and employee contributions. *Pemberton*, 2008 WL 4498811, at *6. [Record No. 20-2, p. 8] And with respect to the fourth factor, the procedures for receiving benefits are outlined in the "Claims Procedures." [Record No. 20-3, pp. 19–21] Because a reasonable person could ascertain the intended benefits, the class of beneficiaries, the source of financing, and the procedures for the LTD plan, an ERISA plan exists. *See, e.g.*, *Carter v. Guardian Life Ins. Co. of Am.*, No. 11-3-ART, 2011 WL 1884625, at *2 (E.D. Ky. May 18, 2011).

### C.     Actions to "Establish or Maintain" the Plan

Finally, the defendant must prove that the employer "established or maintained the plan with the intent of providing benefits to its employees." *Thompson v. Am. Home Assurance Co.*, 95 F.3d 429, 435 (6th Cir. 1996) (citing 29 U.S.C. § 1002(1)). "Employers may establish ERISA plans very easily." *Libbey-Owens v. Blue Cross and Blue Shield Mut. of Ohio*, 982 F.2d 1031, 1034 (6th Cir. 1993). In fact, they may do so by merely purchasing group health insurance, even if they do not retain control, administrative power, or

responsibility for benefits. *Id.* It is not necessary that the employer be involved in plan administration for it to establish and maintain a plan.[10] *Carter*, 2011 WL 1884625, at *3.

Here, Nurses Registry contracted with Lincoln to provide LTD benefits to its employees, negotiating over the terms and conditions of the policy. [Record No. 20-2, p. 8, RGO Checklist]  For instance, it determined eligibility criteria and bargained to grandfather in two specific employees.  [*Id.*, pp. 3, 8, 23]  Because the statute only requires "some meaningful degree of participation by the employer in the creation **or** administration of the plan," the Court concludes that Nurses Registry established and maintained an ERISA plan. *Thompson v. Am. Home Assurance Co.*, 95 F.3d 429, 438 (6th Cir. 1996) (quoting *Hansen v. Cont'l Ins. Co.*, 940 F.2d 971, 977 (5th Cir. 1991)) (emphasis added).

### III.

Defendant Lincoln has established that Latham's long-term disability policy does not fall within the safe harbor regulations set out in 29 C.F.R. § 2510.3-1(j) because:  (i) Nurses Registry contributed to the overall plan of which the LTD benefits were a part and (ii) Nurses Registry endorsed the LTD policy.  Additionally, Lincoln has shown that a reasonable person could ascertain the intended benefits, beneficiaries, sources of funding, and procedures for receiving benefits of the ERISA "plan."  And Lincoln has demonstrated that Nurses Registry established and maintained the plan at issue.

Since Latham's LTD policy satisfies the three-part *Thompson* test, ERISA governs the plaintiff's claims asserted under that policy.  Therefore, removal based on the existence

---

10    The Sixth Circuit rejected the Fifth Circuit's approach advocated by Latham, at least insofar as a plaintiff alleges that an employer must *administer claims* in order to establish or maintain a policy. *Int'l Res., Inc. v. New York Life Ins. Co.*, 950 F.2d 294, 297 (6th Cir. 1991). [Record No. 19-1, p. 15]

of a federal-question is proper.  28 U.S.C. §§ 1441(a), 1331.  To the extent that the plaintiff seeks an order regarding whether this action is governed by ERISA [Record No. 19], that request is **GRANTED**.

This 21st day of September, 2015.

Signed By:
*Danny C. Reeves*   DCR
United States District Judge